UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAFAEL L. T., ) | |
| ) | |
| Plaintiff, ) | No. 20-cv-3469 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| KILILO KIJAKAZI, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff RAFAEL L. T. appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits. The parties have filed cross-motions for summary judgment.[1] As detailed below, Plaintiff's motion for summary judgment [dkt. 16] is GRANTED; Defendant's motion for summary judgment [dkt. 21] is DENIED. The Court hereby remands this matter for further proceedings consistent with this Order.

**Standard of Review**

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

---

[1] Plaintiff has filed a Memorandum in Support of Motion for Summary Judgment [dkt. 16], which the Court construes as a motion for summary judgment.

## **Analysis**

Plaintiff filed a claim for Disability Insurance Benefits, which was denied initially and upon reconsideration. [Administrative Record ("R.") 188.] As part of the evaluation of his claim, Plaintiff was given a consultative medical examination by State agency medical consultant, Dr. Roopa Karri, M.D. [R. 916.] Dr. Karri issued a four-page Internal Medicine Consultative Examination report detailing her findings and opinions about Plaintiff's condition based on her examination. [R. 916-19.] Later, an initial Administrative Hearing was scheduled. Prior to that Administrative Hearing, Plaintiff submitted to the ALJ a Request to Issue Subpoena to Dr. Karri. [R. 494-95.] The Request detailed, among other things, that Plaintiff sought Dr. Karri's testimony because Plaintiff "[did] not know whether the ALJ [would] rely on the opinions from this medical witness when issuing the decision." [R. 495.] Additionally, Plaintiff wanted to know the extent of Dr. Karri's knowledge, training, and experience; time expended; documents reviewed; observations made at the exam (as Plaintiff felt they were inconsistent with other medical evidence of Record); and the process and basis used to provide the disclosed opinions.[2] [*Id*.] No subpoena was issued for Dr. Karri's testimony and Dr. Karri did not testify at the Administrative Hearing.

After the Administrative Hearing, Administrative Law Judge ("ALJ") Edward Studzinski issued an unfavorable August 28, 2018 decision, finding Plaintiff not disabled and denying him Social Security disability benefits. [R.188-98.] Plaintiff appealed to the Appeals Council ("AC") and the matter was returned to ALJ Studzinski pursuant to a remand order from the AC. [R. 206-08.] The AC vacated the ALJ's August 28, 2018 decision because, *inter alia*, the ALJ failed to even consider Plaintiff's timely request to subpoena Dr. Karri. [R. 207.] To remedy this error, the AC directed the

---

[2] Defendant's argument that Dr. Karri's report contains no "opinions" is a nonstarter. [Dkt. 22, p. 3.] Not only does the report facially contain a whole category of Dr. Karri's "Impressions" (as well as other language where Dr. Karri states "It is my opinion that…") [R. 919], but Plaintiff has detailed, *inter alia*, how he intended to inquire as to the process and basis for Dr. Karri's other observations (even if Defendant describes them as "objective.")

ALJ to evaluate Plaintiff's subpoena request. [*Id.*]

After a second Administrative Hearing, ALJ Studzinski again issued an unfavorable decision, which purported to remedy the errors identified by the AC. [R. 10-31.] Therein, the ALJ denied Plaintiff's request to subpoena Dr. Karri because he did "not rel[y] solely upon this examination in [his] decision." [R. 10.] That was the extent of the ALJ's "evaluation" of Plaintiff's subpoena request.

However, Plaintiff's concern was never that the ALJ would rely *solely* on Dr. Karri's opinion; his concern was that the ALJ would rely upon it at all. [R. 494-95.] Indeed, Plaintiff's concerns were well-founded: after rejecting both the opinion of the medical expert ("ME") who testified at the supplemental hearing and the opinion of Plaintiff's primary care physician, the ALJ assigned "great weight" to the non-examining State agency medical consultants (one of whom is Dr. Karri). [R. 25-26.]

Though the ALJ does not specifically assign a weight to Dr. Karri's opinion, it appears he accepted it in its entirety. Citing to Dr. Karri's consultative examination, the ALJ noted her largely unremarkable findings, including 5/5 grip strength, the ability to make fists and oppose fingers, and 5/5 motor strength in all extremities. [R. 19.] Like the non-examining State agency consultants, Dr. Karri appeared to believe no manipulative limitations were warranted. [*See* R. 166, 180.] Without referring to Dr. Karri by name, the ALJ deferred to her findings regarding Plaintiff's upper extremity limitations and rejected the opinion of the ME that Plaintiff would be limited to only occasional use of the bilateral hands for reaching, feeling, fingering, pushing, and pulling. [R. 24, 61, 944-45.]

The discrepancy between the ME's assessment of upper extremity limitations and Dr. Karri's assessment of upper extremity limitations is pivotal, given the ALJ's explanation for his single modification to the RFC assessment in his second decision – that Plaintiff can frequently, as opposed to occasionally, perform fine and gross manipulation with his dominant left upper extremity. [*Compare* R. 17 with R. 193.] At the second hearing, the ALJ specifically asked the Vocational Expert

3

("VE") whether reducing this limitation to "occasional" would affect the occupational base, and the VE testified that all work would be precluded at both the light and sedentary exertional level.[3] [R. 81-83.] Thus, based upon the second VE's testimony alone, the ALJ would have had to declare Plaintiff disabled under his initial RFC assessment. [*See* R. 193.]

Yet faced with his prior decision finding limiting Plaintiff to occasional fine and gross manipulation with his dominant left upper extremity, rather than declare Plaintiff disabled under that rubric, the ALJ in his new decision made the astounding assertion that his earlier RFC limitation to "occasional" left upper extremity fine and gross manipulation in his initial decision was a typographical error. [R. 22.] It is difficult for the Court to imagine that typing the word "occasional" rather than "frequent" can be attributed to a mere typo. More importantly, the significance of this difference cannot be understated in the instant matter – the effect of this typo, as the ALJ discovered during the second hearing, was the difference between a finding of disability and no disability. Yet the ALJ went on to assert he again reviewed the Administrative Record and, essentially, remains convinced that "frequent" is appropriate (despite this *not* being part of his original opinion)." [R. 22.] The ALJ's current insistence that there are insufficient objective and clinical findings to support the limitation he included in the first RFC assessment through a "typo" is so flimsy it borders on pretextual. The Court finds the ALJ's explanation in this regard unsupported by substantial evidence.

Although cross-examination via subpoena "is not an absolute right in administrative cases," an administrative claimant is entitled to "such cross-examination as may be required for a full and true disclosure of the facts." *Butera v. Apfel*, 173 F.3d 1049, 1057 (7th Cir. 1999) (cleaned up; citations omitted). The denial of a subpoena for the second time in this matter, when the ALJ knew

---

[3] This line of questioning satisfied the first of the four bases for remand listed in the AC's order: the ALJ's failure to pose a hypothetical to the VE regarding "occasional" left sided fine and gross manipulation, despite including that limitation in the first RFC assessment. [R. 193, 206.]

4

he had wholesale adopted the opinions of Dr Karri, strikes the Court as not just clearly incorrect, but fundamentally wrong; in light of these facts, no reasonable person could agree with the ALJ's denial of a subpoena to probe Dr Karri's opinions. Plaintiff laid out the facts he expected to develop via Dr. Karri's testimony, and these facts are specific to Dr. Karri and her report (*e.g.*, Dr. Karri's knowledge, training, and experience; time expended on the exam of Plaintiff; the process and basis of Dr. Karris' exam observations and opinions); the Court does not find these facts could have been proven without issuing a subpoena in this matter. *Id*.; 20 C.F.R. § 404.950(d)(2). And, in reality, the truth of the matter is that Dr. Karri's opinions (adopted in full but not referred to by name) in were *crucial* to the ALJ's determination to deny Plaintiff's disability benefits in the instant matter. Thus, the Court finds the issuance of the subpoena was "reasonably necessary for the full presentation of the case" 20 C.F.R. §404.950(d)(1); the ALJ knew, or should have known, this based on his initial opinion. Particularly in light of the Appeals Council's directive to properly evaluate Plaintiff's request for a subpoena (whatever the nature of Dr. Karri's report), the ALJ's failure to do so constitutes reversible error. Separately, the Court also finds the ALJ failed to satisfy the AC's order to "evaluate" Plaintiff's subpoena request due to an inadequate single-sentence-discussion of this issue, which is a related, but independent, basis for remand. *Lopez*, 336 F.3d at 539.

Additionally, given that the ALJ had an opportunity to correct the errors identified by the Appeals Council and failed to do so (indeed, seemingly "doubling down" on at least one of the errors), the Court recommends that Plaintiff's case be assigned to a different ALJ on remand. *Robert M. W. v. Saul*, 2020 WL 6801842, at *11 (N.D. Ill. Nov. 19, 2020) (citing *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (recommending reassignment because "[t]he tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim.")). The Court further recommends the Agency issue a subpoena for Dr. Karri's testimony in this matter if, upon review of the file, there is going to be another Administrative

5

Hearing.

## Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Order. The Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff other than those discussed herein. Plaintiff's motion for summary judgment [dkt. 16] is GRANTED; Defendant's motion for summary judgment [dkt. 21] is DENIED. The Court hereby remands this matter for further proceedings consistent with this Order.

Entered: December 6, 2021

_____
Susan E. Cox,
United States Magistrate Judge